IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHENIQUA L. WATSON,
          Plaintiff,

v.                                                                                 Civil Action No. 3:19-cv-466

VIRGINIA DEPARTMENT OF
AGRICULTURE AND CONSUMER
SERVICES,
          Defendant.

## OPINION

Sheniqua L. Watson has sued her former employer, the Virginia Department of Agriculture and Consumer Services ("VDACS"), alleging that VDACS discriminated against her based on her race and gender. Watson asserts claims for disparate treatment, hostile work environment, wage discrimination based on race, and retaliation under Title VII of the Civil Rights Act of 1964. She also asserts claims for race discrimination under 42 U.S.C. § 1981 and wage discrimination based on gender under the Equal Pay Act. VDACS has moved to dismiss for failure to state a claim. Because Watson has failed to state a claim for relief, the Court will grant the motion to dismiss. The Court, however, will grant Watson leave to file an amended complaint only as to her wage discrimination claims under Title VII and the Equal Pay Act.

## I. BACKGROUND

### A. *Facts Alleged in the Complaint*

Watson, an African American woman, began working at VDACS as an hourly employee in 2005. As an "Administrative and Office Specialist III," Watson worked part-time and earned $12 per hour. (Compl. ¶ 3.) For four years, Watson tried to obtain full-time employment with VDACS. In June, 2009, she became a full-time employee at VDACS as a "[L]ead [L]icensing

[S]pecialist" in the Office of Pesticide Services. (*Id.* ¶ 6.) Watson earned an annual salary of $27,810—less than the $38,271 salary her predecessor, a white woman, earned. In 2012, Watson asked why she did not receive administrative support as her predecessor had. In May, 2012, Watson received a "write-up" for declining work product. She also requested an internal alignment,[1] which VDACS declined to give her. In January, 2013, Watson questioned why her salary was on the low end of the pay band.[2] Her supervisor, who was also her predecessor, told her "that the maximum pay was $36,621 with eighteen years of service." (*Id.* ¶ 9.) In March, 2013, Watson unsuccessfully interviewed for a new position in VDACS' Office of Charitable and Regulatory Programs.

After her interview, Watson began receiving negative comments in her employee evaluations for the first time in four years. A coworker also accused Watson of threatening her. Nevertheless, her overall employee evaluations indicated that she was meeting job expectations. In December, 2013, VDACS moved Watson's desk away from the rest of her team to an undesirable location near the restrooms. In December, 2013, Watson "filed a grievance due to a continued hostile work environment promoted and encouraged by management and human resources." (*Id.* ¶ 13.) She also received a transfer to the Office of Charitable and Regulatory Programs, where she retained the same job title and duties.

On October 22, 2014, Watson's supervisor "demoted" her by removing files from her desk and preventing her from processing registrations. (*Id.* ¶ 15.) Although her salary and job title

---

[1] An internal alignment analyzes an employee's salary against a series of factors to determine whether the employee's salary matches his or her qualifications.

[2] The pay band ranged from $23,999 to $49,255.

remained the same, she essentially performed receptionist duties. Her new duties involved answering phone calls, processing mail, and "processing emailed extensions." (*Id.*)

Watson unsuccessfully asked management to reconsider the reduction in her responsibilities. She "complained about the demotion on numerous occasions[,] resulting in [her supervisor's] retaliating and micro-managing [her]." (*Id.* ¶ 17.) She says that management (1) checked in with her daily, (2) issued a written reprimand for turning in her time sheets late, (3) warned her to return voicemails faster, and (4) warned her to reduce her use of flex time. Meanwhile, her white coworkers received promotions and raises, "some within months of their initial hire." (*Id.* ¶ 16.) Watson then filed a Freedom of Information Act ("FOIA") request for her disciplinary file with VDACS.

In January, 2017, VDACS hired Joseph Cason, its first African-American manager in Watson's tenure. Cason was the lowest-paid manager with that title. Watson alleges that VDACS hired Cason to "invalidate her allegations" of racial discrimination. (*Id.* ¶ 23.) White employees filed complaints against Cason for raising his voice, banging his fists on the table during meetings, and poor management. Eventually, Cason stepped down from his position due to the "hostile work environment." (*Id.*)

In November, 2017, Watson filed further FOIA requests. She alleges that minority employees earned salaries at the lower end of the pay band and white employees earned salaries at the higher end of the pay band.

### B. Watson's Previous Lawsuit and Procedural History

On March 4, 2015, Watson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). She received a right to sue letter on September 28, 2016. She filed her initial complaint against VDACS on December 15, 2016. VDACS moved to dismiss

3

Watson's complaint for failure to state a claim. The Court referred the matter to Magistrate Judge Roderick C. Young. On December 22, 2017, Magistrate Judge Young recommended dismissing Watson's complaint with prejudice. *See Watson v. Va. Dep't of Agric. & Consumer Servs.*, No. 3:16cv985, 2017 WL 8220238 (E.D. Va. Dec. 22, 2017), *report & recommendation adopted in part*, 2018 WL 1277744 (Mar. 12, 2018). On March 12, 2018, the Court adopted Magistrate Judge Young's Report and Recommendation, but revised it to dismiss Watson's case without prejudice.

On August 1, 2018, Watson filed a second EEOC Charge. On August 14, 2018, she resigned from VDACS. She received a right to sue letter on March 26, 2019. Watson then filed this case. Liberally construed, Watson's complaint raises six claims: disparate treatment in violation of Title VII (Count One), retaliation in violation of Title VII (Count Two), hostile work environment in violation of Title VII (Count Three), disparate pay in violation of Title VII (Count Four), race discrimination in violation of 42 U.S.C. § 1981 (Count Five), and gender discrimination in violation of the Equal Pay Act (Count Six).[3] VDACS has moved to dismiss the complaint for failure to state a claim.

## II. LEGAL STANDARD

VDACS has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards*

---

[3] In her complaint, Watson lists her Title VII claims as a single count. Because Watson's allegations appear to raise four different Title VII claims, the Court enumerates her Title VII claims as separate counts.

4

*v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the plaintiff appears pro se, as Watson does here, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle of liberal construction has its limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

### III. DISCUSSION

#### A. Title VII Claims

Watson asserts four claims under Title VII: disparate treatment (Count One), retaliation (Count Two), hostile work environment (Count Three), and disparate pay (Count Four).

##### 1. Time-Barred Claims

VDACS contends that Watson's Title VII claims are time-barred because she relies on events that took place more than 300 days before she filed the operative EEOC Charge. "Before a federal court may assume jurisdiction over a Title VII claim, a claimant must exhaust the

5

administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), including a determination by the EEOC as to whether 'reasonable cause' exists to believe the charge of discrimination is true." *McKelvy v. Capital One Servs., LLC*, No. 3:09cv821, 2010 WL 3418228, at *2 (E.D. Va. Aug. 20, 2010), *aff'd*, 431 F. App'x 237 (4th Cir. 2011) (per curiam). A plaintiff "may proceed and recover only on deliberate discrimination that occurred within the 300 days of filing [her] charge." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019). Although a plaintiff cannot obtain relief under Title VII based on time-barred conduct, a plaintiff may rely on that conduct "as 'background evidence in support of a timely claim.'" *McKelvy*, 2010 WL 3418228, at *2 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

### a. Count One: Disparate Treatment

In Count One, Watson asserts that she suffered disparate treatment in violation of Title VII. To state a disparate treatment claim under Title VII, a plaintiff must plead facts showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). VDACS argues that Watson has failed to show that she suffered an adverse employment action.

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Supinger v. Virginia*, 167 F. Supp. 3d 795, 807 (W.D. Va. 2016) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Adverse employment actions may involve "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

Watson relies on the following allegedly discriminatory events as adverse employment actions: (1) the demotion on October 22, 2014; (2) the "micromanagement" between 2014 and 2015; and (3) the denial of administrative support between 2009 and 2014.[4] Watson, however, may only seek relief based on conduct that occurred within 300 days of her EEOC Charge. *See Perkins*, 936 F.3d at 207. Watson filed the operative EEOC Charge on August 1, 2018. Thus, Watson cannot rely on events that occurred before October 5, 2017. Because the demotion, micromanagement, and lack of administrative support all occurred before October 5, 2017, those events "cannot form the basis of a Title VII lawsuit." *McKelvy*, 2010 WL 3418228, at *2.[5]

Because Watson relies on time-barred conduct and otherwise fails to state a plausible disparate treatment claim, the Court will dismiss Count One with prejudice.

### b. Count Two: Retaliation

In Count Two, Watson asserts that VDACS retaliated against her after she filed a grievance in December, 2013, and after she complained about the demotion in October, 2014. To state a claim for retaliation, a plaintiff "must show (1) [she] engaged in a protected activity, (2) that a materially adverse employment action was taken against [her], and (3) that a causal connection

---

[4] Watson does not identify the precise dates on which she experienced the alleged micromanagement or denial of administrative support. Nevertheless, her allegations appear to be based on events that took place on or before August 19, 2015. (*See* Compl. ¶¶ 8-18.)

[5] Even if Watson's allegations regarding micromanagement and administrative support were timely, those allegations do not qualify as adverse employment actions. Watson's allegations of micromanagement—warnings, poor performance reviews, and reprimands—do not constitute adverse employment actions. *Cf. Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (per curiam) (holding that neither a counseling letter nor a change to a new scheduling system constituted an adverse employment action). Similarly, Watson's allegation that VDACS denied her the administrative support it afforded her white predecessor does not constitute an adverse employment action. The lack of administrative support may have made Watson's job more difficult, but it did not result in a "significant change in employment status." *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 237 (4th Cir. 2018) (per curiam).

existed between the protected activity and the alleged adverse action." *Holleman v. Colonial Heights Sch. Bd.*, 854 F. Supp. 2d 344, 354 (E.D. Va. 2012). With respect to the second element, "an employer's conduct must be 'so materially adverse as to dissuade a reasonable employee from engaging in protected activity'" and the plaintiff "must show that her protected activity serves as the 'but-for' cause of her employer's adverse action." *Michael v. Va. Commonwealth Univ.*, No. 3:18cv125, 2018 WL 3631888, at *3 (E.D. Va. July 31, 2018) (quoting *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 831 (E.D. Va. 2016)).

Watson alleges that VDACS twice retaliated against her. First, she asserts that she "filed a grievance due to a continued hostile work environment" in December, 2013, and that her supervisor retaliated by "demoting" her on October 22, 2014. (Compl. ¶¶ 13, 15.) Second, Watson alleges that her supervisor retaliated against her after she "complained about the demotion on numerous occasions." (*Id.* ¶ 18.) The alleged retaliatory events she experienced after complaining about the demotion all appear to have taken place on or before August 19, 2015. (*Id.*) As the Court explained above, Watson cannot seek relief under Title VII for retaliation based on events that occurred more than 300 days before she filed the operative EEOC Charge. *See Perkins*, 936 F.3d at 207. Because she relies on conduct that occurred outside the 300-day window, Watson cannot seek relief based on those events.[6]

---

[6] Even if Watson's retaliation claims were timely, she fails to state a plausible retaliation claim. First, as the Court explained in its Opinion dismissing Watson's first lawsuit, she "fails to show a causal connection between filing her [December, 2013] grievance and her October[,] 2014 change in responsibilities." *Watson*, 2017 WL 8220238, at *9. Second, the alleged retaliatory events she experienced after she complained about the demotion do not constitute "materially adverse employment action[s]." *Holleman*, 854 F. Supp. 2d at 354. The harmful conduct—daily desk checks, a "counseling memo" for turning in time sheets late, threats about the failure to return voicemail messages on time, and accusations of using too much "flex time"—would not "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Barnes v. Charles Cty. Pub. Schs.*, 747

In sum, Watson relies on time-barred conduct and otherwise fails to state a plausible retaliation claim. Accordingly, the Court will dismiss Count Two with prejudice.

### 2. *Remaining Title VII Claims*

#### a. *Count Three: Hostile Work Environment*

In Count Three, Watson asserts that VDACS maintained a hostile work environment in violation of Title VII.[7] To state a hostile work environment claim based on race, a plaintiff must plead facts showing that "(1) [s]he experienced unwelcome harassment; (2) the harassment was based on h[er] race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Perkins*, 936 F.3d at 207-08. VDACS argues that Watson fails to plead facts to meet the "severe or pervasive" standard.

Watson's complaint "must clear a high bar" to meet the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

---

F. App'x 115, 119 (4th Cir. 2018) (per curiam) ("An employee is not insulated from discipline simply because [s]he engaged in protected activity.").

[7] "Unlike an allegation of discrimination grounded in discrete acts, when a Title VII claim based on a hostile work environment is alleged, a court is not necessarily constrained in its analysis to only consider actions that occurred within 300 days of filing the EEOC Charge." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 620 (E.D. Va. 2011) (explaining the "continuing violation" doctrine). Thus, although Watson bases her hostile work environment claim on events that occurred outside the 300-day window, the Court will consider whether Watson states a plausible claim for relief.

Offensive epithets, simple teasing, and offhand remarks will not satisfy the test. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

Here, Watson argues that her supervisor "began to make the work environment hostile by checking [her] desk daily . . . and scrutinizing [her] time." (Dk. No. 11, at 23). Additionally, she alleges that her coworkers treated her with "indifference, [would] not speak[ ] [to her], slam[ed] doors [in] [her] presence[,] . . . and extend[ed] daily lunch invitations to all other non-Black team members[,] intentionally ignoring [her]." (Compl. ¶ 23.) Despite the undesirable behavior of her coworkers and supervisors, Watson's allegations do not meet the severe or pervasive standard. Title VII prohibits "extreme" conduct that "must . . . amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. It does not create "a 'general civility code,'" nor does it impose liability for "the ordinary tribulations of the workplace." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Watson alleges that she experienced "rude treatment by [coworkers]," "callous behavior," and "personality conflict[s]" during her time at VDACS, but those experiences fall short of a plausible hostile work environment claim. *Sunbelt Rentals, Inc.*, 521 F.3d at 315. Because Watson fails to plead that she experienced severe or pervasive harassment, the Court will dismiss Count Three with prejudice.

*b. Count Four: Disparate Pay*

In Count Four, Watson asserts a claim for wage discrimination under Title VII.[8] To state a disparate pay claim under Title VII, a plaintiff must plead facts showing "that (1) she is a member

---

[8] Because the "continuing violation" doctrine applies to wage discrimination claims under Title VII, a plaintiff may seek relief based on conduct that occurred outside the 300-day window if she can "show an actual Title VII . . . violation within the statute of limitations." *See Becker v. Gannett Satellite Info. Network, Inc.*, 10 F. App'x 135, 138 (4th Cir. 2001) (per curiam). Watson alleges that she resigned from VDACS on August 14, 2018, so she presumably suffered the alleged wage discrimination after October 5, 2017.

of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004). VDACS argues that Watson fails to plead facts showing that higher-paid white employees at VDACS performed substantially similar work.

When a plaintiff "base[s] her allegations 'completely upon a comparison to an employee from a non-protected class[,] . . . the validity of her [claim] depends upon whether that comparator is indeed similarly situated.'" *Lawrence v. Global Linguist Sols LLC*, No. 1:13cv1207, 2013 WL 6729266, at *4 (E.D. Va. Dec. 19, 2013) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam)). A plaintiff must plead facts showing that the comparators "dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Here, Watson asserts that white "employees [are] given preference and hired at maximum salaries," while "[m]inority employees are hired . . . at the bottom to the middle of salary ranges." (Compl. ¶ 21.) She identifies the salaries of the following white VDACS employees:

| Name | Race | Gender | Hire Date | Title | Salary |
|---|---|---|---|---|---|
| Alison Foster | White | Female | November, 2013 | Compliance Officer | $42,500 |
| Joel Maddux | White | Male | November 25, 2014 | Compliance Officer | $42,500 |
| Caly Emerson | White | Female | September 10, 2015 | Registrations Analyst | $39,626 |
| Kathryn Land | White | Female | February 10, 2016 | Compliance Officer | $51,000 |
| Alyssa Royer | White | Female | July 11, 2016 | Compliance Officer | $51,000 |

(*Id.*)

Watson further alleges that VDACS "routinely pass[es] over minority employees for promotions." (*Id.* ¶ 22.) She points to various additional VDACS employees, including (1) Laura Hare, a white female, who received a $5,000 pay increase "within five months;" (2) Heather Hodges, a white female, who "was hired as a Compliance Officer [with]in one year;" (3) Joel

11

Maddux, a white male, who "was hired as a Compliance Officer within nine months" and now earns "over $75,000;" (4) Lindsay Barker, a white female, who "was hired out of college at $5,000 more than [Watson];" and (5) Alison Foster, a white female, who "was hired as the team leader of the registrations unit" despite "minimal work experience." (*Id.* ¶ 22(b)-(f).) Watson further asserts that other minority employees experienced "the same discriminatory pay tactic" as she did.[9] (*Id.*)

Watson does not plead sufficient facts to show that higher-paid white employees "w[ere] performing a substantially similar job." *Kess*, 319 F. Supp. 2d at 644. For example, Watson does not allege that the higher-paid white employees "dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Lawrence*, 2013 WL 6729266, at *4. In other words, Watson "fails to establish a plausible basis for believing" that the higher-paid white employees "were actually similarly situated." *Coleman*, 626 F.3d at 191.

Nonetheless, to give Watson an opportunity to comply with the pleading standard, the Court will grant Watson leave to file an amended complaint as to Count Four.[10] Accordingly, the Court will dismiss Count Four without prejudice.

---

[9] Watson also identifies the salaries of various VDACS managers to support her allegation that Cason (the only African American manager) earned a lower salary than white managers. Because management-level employees were not similarly situated to Watson, she cannot rely on those employees as comparators to support her wage discrimination claim.

[10] The Court cautions Watson that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, Watson must plead sufficient facts to render her claim plausible that the higher-paid white employees "were actually similarly situated." *Coleman*, 626 F.3d at 191.

### B. *Count Five: § 1981 Claim*

In Count Five, Watson asserts a race discrimination claim pursuant to 42 U.S.C. § 1981. Section 1981, however, "does not confer a private right of action against state actors." *Spellman v. Sch. Bd. of City of Chesapeake*, No. 2:17cv635, 2018 WL 2085276, at *12 (E.D. Va. Apr. 5, 2018), *report & recommendation adopted*, 2018 WL 2015810 (Apr. 30, 2018). Indeed, "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Because § 1981 does not apply to state actors such as VDACS, the Court will dismiss Count Five with prejudice.[11]

### C. *Count Six: Equal Pay Act Claim*

In Count Six, Watson asserts a wage discrimination claim based on gender under the Equal Pay Act ("EPA").[12] To state a claim under the EPA, a plaintiff must plead facts showing "(1) that her employer has paid different wages to employees of opposite sexes; (2) that the employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Maron v. Va. Polytechnic Inst. & State Univ.*, 508 F. App'x 226, 232 (4th Cir. 2013) (per curiam). To meet the second element of an EPA claim, a plaintiff must

---

[11] Because VDACS is not a "person" amenable to suit under § 1983, any amendment would be futile. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (holding that state agencies "that are considered 'arms of the State' for Eleventh Amendment purposes" are not amenable to suit under § 1983).

[12] "The [EPA] has a two-year statute of limitations unless the plaintiff claims that the defendant's conduct was willful, in which case a three-year period applies." *Becker*, 10 F. App'x at 138 (citing 29 U.S.C. § 255(a)). Additionally, the Watson "may rely upon conduct outside the statue of limitations if she can show a continuing violation." *Id.* Here, Watson alleges that VDACS willfully violated the EPA. (Compl. ¶ 36.) Because she alleges that she suffered wage discrimination until her resignation on August 14, 2018, Watson asserts a timely EPA claim.

13

"adequately allege[ ] that her male comparators held jobs requiring 'equal skill, effort, and responsibility.'" *Reardon v. Herring*, 191 F. Supp. 3d 529, 547 (E.D. Va. 2016).

Liberally construed, Watson's complaint identifies three male employees as potential comparators: Joel Maddux, (compl. ¶¶ 21(b), 22(d)); Joseph Cason, (*id.* ¶ 23(c)); and Ehonam "Roger" Agbati, (*id.* ¶ 24). Watson asserts that Maddux initially earned $42,500[13]; Cason earned $42,000; and Agbati earned $35,936. (Dk. No. 4, at 20.) Watson says she earned $31,694. (*Id.*)

"[T]he burden falls on the plaintiff to show that the skill, effort[,] and responsibility required in her job performance are [substantially] equal to those of a higher-paid male employee." *Wheatley v. Wicomico County*, 390 F.3d 328, 332 (4th Cir. 2004). To show that a comparator male employee performed a "substantially equal" job, a plaintiff must allege that "a significant portion of the two jobs is identical." *Reardon*, 191 F. Supp. 3d at 547. Here, Watson does not plead facts showing "that the opposite sex comparators performed substantially similar work, received identical classification, and had comparable work experience." *Id.* at 548.

Nonetheless, to give Watson an opportunity to comply with the pleading standard, the Court will grant Watson leave to file an amended complaint as to Count Six. Accordingly, the Court will dismiss Count Six without prejudice.

## IV. <u>CONCLUSION</u>

Because Watson fails to state a claim for relief, the Court will grant VDACS' motion to dismiss. The Court will dismiss Counts One, Two, Three, and Five with prejudice. The Court will dismiss Count Four (wage discrimination based on race under Title VII) and Count Six (wage discrimination based on gender under the EPA) without prejudice.

---

[13] Watson alleges that Maddux earned $42,500 before his promotion "nine months later," after which he earned $76,322. (Dk. No. 4, at 20.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: 12 March 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge